**Petition for Writ of Mandamus Conditionally Granted and Majority and Dissenting Opinions filed September 30, 2014.**



**In The**

# Fourteenth Court of Appeals

---

## NO. 14-14-00486-CV

---

### IN RE DIANA LOVELL-OSBURN, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**246th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-18060**

---

## DISSENTING OPINION

The parties in the underlying litigation mutually agreed to include in their mediated settlement agreement ("MSA") a provision retaining venue of any future proceedings in the 246th District Court. Section 153.0071(e) of the Texas Family Code provides that a party is "entitled to judgment" on a compliant MSA

"notwithstanding . . . another rule of law." The Supreme Court of Texas in *In re Lee*, 411 S.W.3d 445 (Tex. 2013) (orig. proceeding), considered the language in Section 153.0071(e) and concluded that a trial court is required (subject only to limited exceptions not applicable here) to defer to the terms of the parties' MSA regardless of other statutory mandates that ordinarily would apply. In concluding that the mandatory venue provision at Section 155.201(b) of the Family Code requires transferring the underlying case to Burleson County in contravention of the MSA in this case, the majority fails to recognize the operative effect of the language in Section 153.0071(e) as interpreted by *Lee*. Therefore, I respectfully dissent.

The reasoning employed by the court in *Lee* cannot be confined solely to the circumstances in that case. First, before even reaching the statutory interpretation question, the court provided a detailed explanation of the legislative policy underlying the mandate in Section 153.0071(e)—namely, that "the amicable resolution of child-related disputes should be promoted forcefully." *Id.* at 449–50. Such policy concerns are equally present in circumstances where reaching an amicable resolution may be contingent on the parties' ability to consent to a different venue for future proceedings than that provided by the Family Code.

Second, in interpreting the language in Section 153.0071(e) that provides a party is entitled to judgment on an MSA "notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law," the court rejected a narrower reading of this language as only pertaining to a party's ability to revoke an MSA prior to entry of judgment. *Lee*, 411 S.W.3d at 454 n.8. Rather, in adopting a broader

interpretation, the supreme court concluded that the mandate in Section 153.0071(e) to enter judgment on an MSA controls over the mandate in Section 153.002 of the Family Code that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." *Lee*, 411 S.W.3d at 454–55. How can the majority say that the policy at issue here, establishing venue in the county of a child's residence, is more important than the policy trumped in *Lee*, the best interest of the child (specifically, in *Lee*, best interest concerns that were raised about the child residing with a registered sex offender)?

If, under *Lee*, Section 153.0071(e) requires a trial court to defer to the terms of an MSA despite the best interest mandate of Section 153.002, then Section 153.0071(e) likewise requires a trial court to defer to the terms of an MSA despite the mandatory venue provision at Section 155.201(b). Section 153.0071(e) requires a trial court to enter judgment on an MSA "notwithstanding . . . another rule of law." Section 155.201(b) is another rule of law, and the broad interpretation given the language in Section 153.0071(e) by the supreme court does not exclude the issue of venue. *See Lee*, 411 S.W.3d at 454 & n.8; *see also In re Fisher*, 433 S.W.3d 523, 534 (Tex. 2014) (orig. proceeding) (stating use of "notwithstanding" language in a venue provision in Chapter 15 of the Civil Practice and Remedies Code "indicates that the Legislature intended for it to control over other mandatory venue provisions").

The majority grounds its conclusion on the fact that the supreme court in *Lee* did not reach the question of whether a trial court is required to enter judgment on

3

an MSA where the MSA is illegal. *See* 411 S.W.3d at 455 n.10; *see also id.* at 464 n.9 (Guzman, J., concurring). The majority states the general rule that parties cannot contract to fix venue in contravention of Section 155.201(b) of the Family Code, and that the Legislature did not intend by adopting Section 153.0071(e) to enable parties to enforce contractual provisions that are void as being contrary to public policy. But by focusing on the question the supreme court did not reach in *Lee*, the majority fails to recognize the implication of the holding on the question the supreme court did reach.

The mandate that trial courts are to consider the best interest of the child is one that permeates the Family Code. *See id.*, 411 S.W.3d at 471 n.6 (Green, J., dissenting) (listing over 100 sections of the Family Code relating to protection of a child's best interest); *see also Lenz v. Lenz,* 79 S.W.3d 10, 14 (Tex. 2002) ("The Legislature has made clear that '[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child.'") (quoting Tex. Fam. Code § 153.002) (alteration in original). Therefore, a party seeking to enforce a contract establishing terms of conservatorship or possession of and access to a child that are not (from the court's perspective) in that child's best interest would be just as much contrary to public policy as a party seeking to enforce a contractual provision attempting to fix venue in contravention of Section 155.201(b). *See Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 665 (Tex. 2008) ("The Legislature determines public policy through the statutes its passes."). But in *Lee*, the supreme

4

court concluded that the mandate to enter judgment on an MSA controls over the best interest mandate. *See* 411 S.W.3d at 448, 452, 454–55.

Consequently, it is not sufficient for the majority to note the general rule that parties cannot contract against public policy, because that rationale leaves no way to distinguish the holding in *Lee*. The policy underlying the venue provision at Section 155.201(b) is no more compelling than the policy underlying the Family Code's best interest mandates. *Compare id.*, 411 S.W.3d at 459 n.20 (plurality op.) ("We recognize the serious policy reasons underlying the Family Code's numerous references to a child's best interest . . . .") *with Cassidy v. Fuller*, 568 S.W.2d 845, 847 (Tex. 1978) (orig. proceeding) ("It is manifest, we think, that this venue provision was enacted for the reason that current circumstances affecting the child may usually be best shown in the county where the child resides."). And there is no apparent technical rule of statutory construction that would result in Section 153.0071(e) controlling over the best interest mandate at Section 153.002, but not the venue mandate at Section 155.201(b). *Compare Lee*, 411 S.W.3d at 469 (Green, J., dissenting) (noting Section 153.0071 was enacted in May 1995) *with In re Foreman*, No. 05-13-01618-CV, 2014 WL 72483, *2 (Tex. App.—Dallas Jan. 9, 2014, orig. proceeding [mand. denied]) (mem. op.) (noting longstanding predecessor venue provision was recodified into current section in April 1995); *see also Lee*, 411 S.W.3d at 455 (noting Section 153.0071(e) controls over best interest mandate in part because of more recent date of enactment).

The majority draws support for its holding from the *Lee* majority's direct citation to *In re Calderon*, 96 S.W.3d 711, 718 (Tex. App.—Tyler 2003, orig.

proceeding [mand. denied]), and the citation in Justice Guzman's concurrence to *Garcia-Udall v. Udall*, 141 S.W.3d 323, 331–32 (Tex. App.—Dallas 2004, no pet.) (citing *Calderon*). The majority reasons that it would be anomalous to read *Lee* as requiring enforcement of the venue provision in the parties' MSA when the court of appeals in *Calderon* held a similar venue provision in an MSA was void. I respectfully believe the majority's analysis on this point misses the mark.

First of all, neither the *Lee* majority nor Justice Guzman in her concurrence cited *Calderon* or *Garcia-Udall* for the specific holding in *Calderon* that a provision in an MSA fixing venue is void and unenforceable notwithstanding the mandate at Section 153.0071(e). Rather, *Calderon* and *Garcia-Udall* were cited for the more generic proposition, not at issue in *Lee,* that a trial court may not be required to enter judgment on an illegal MSA. *See Lee*, 411 S.W.3d at 455 n.10; *id.* at 464 n.9 (Guzman, J., concurring). An interpretation that Section 153.0071(e) requires a trial court to enforce a venue provision in an MSA does not foreclose the possibility that certain other provisions in MSAs may be deemed unenforceable for illegality—for example, provisions that require the violation of criminal laws. *See, e.g.*, *In re Kasschau*, 11 S.W.3d 305, 312–13 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding) (op. on reh'g) (concluding trial court did not abuse its discretion by invaliding an MSA that facially called for the destruction of evidence in violation of the Penal Code).

Secondly, the holding in *Calderon* that the venue provision in the parties' MSA was void and unenforceable was based on the conclusion that Section 153.0071(e) did not provide a basis for the parties to override the statutory venue

rule at Section 155.201(b). In reaching that conclusion, the court of appeals adopted the same narrow interpretation of the phrase "notwithstanding . . . another rule of law" in Section 153.0071(e) that the supreme court in *Lee* explicitly rejected. *Compare Lee*, 411 S.W.3d at 454 n.8, *and id.* at 477–79 (Green, J., dissenting), *with Calderon*, 96 S.W.3d at 717–18. Inasmuch as the majority seeks to avoid reading *Lee* as containing an unexplained inconsistency, it should not read *Lee* as tacitly approving the holding in *Calderon* while simultaneously rejecting the reasoning upon which that holding is based.

The majority further rationalizes its holding by stating that an opposite conclusion would open a family law Pandora's Box by enabling parties to include various other provisions in MSAs that are contrary to public policy. But this logic fails to account for the supreme court's express recognition in *Lee* that underlying Section 153.0071(e) is the policy that "the amicable resolution of child-related disputes should be promoted forcefully." 411 S.W.3d at 449–50. Therefore, the issue here and in future cases is not simply whether parties may contract against public policy in an MSA, but rather the resolution of competing public policies. In *Lee*, the supreme court concluded that the mandate in Section 153.0071(e) controls over the best interest mandate at Section 153.002. For the reasons stated above, I cannot reconcile the supreme court's holding in *Lee* with a conclusion that the venue rule at Section 155.201(b) controls over the venue provision in the parties' MSA.

The critical fact in this case is that the question presented involves enforcement of a venue provision included in an MSA entered into under Section

7

153.0071 of the Family Code. We are not asked to opine on the validity of a contractual venue provision under general contract law principles. Section 153.0071(e) provides that a party is entitled to judgment on an MSA "notwithstanding . . . another rule of law," and the supreme court in *Lee* afforded the foregoing phrase a broad interpretation. I read the supreme court's interpretation of the language in Section 153.0071(e) as meaning that the trial court was required to enforce the provision in the parties' MSA preserving venue in the 246th District Court notwithstanding the fact that venue of the underlying litigation would be in Burleson County under Section 155.201(b). Accordingly, I conclude that the trial court did not abuse its discretion in denying Lovell-Osburn's motion to transfer venue to Burleson County. Because the majority holds otherwise, I respectfully dissent.

/s/    Martha Hill Jamison
Justice

Panel consists of Justices Christopher, Jamison, and McCally. (Christopher, J., majority).